Sean M. Lipsky, Esq. – Attorney ID#: 048731998
sean@lipskyportales.com
**LIPSKY PORTALES, P.A.**
A Professional Corporation
150 River Road, Suite A3
Montville, New Jersey 07045
(201) 546-9220
(201) 546-9221 Facsimile
Attorneys for Plaintiff,
Jayshree Sawhney, D.D.S.

|  |  |
|---|---|
| : | UNITED STATES DISTRICT COURT |
| JAYSHREE SAWHNEY, D.D.S., : | FOR THE DISTRICT OF NEW JERSEY |
| : | CIVIL ACTION NO.: |
| Plaintiff, : | |
| : | <u>Civil Action</u> |
| v. : | |
| : | **COMPLAINT** |
| : | |
| VLADIMIR GASHINSKY, D.D.S, : | |
| HOLISTIC DENTAL CENTER, LLC, : | |
| ELLA GASHINSKY, YANINE LOPEZ, : | |
| CLAUDIA VOLDEZ, TATYANA : | |
| VOLMAN, JOHN DOES 1-10 and ABC : | |
| CORPORATIONS 1-1-10, : | |
| : | |
| Defendants. : | |
| : | |

Plaintiff Jayshree Sawhney, D.D.S. ("Dr. Sawhney"), by her attorneys, Lipsky Portales,

P.A., complaining against Defendants Vladimir Gashinsky, D.D.S., Holistic Dental Center, LLC,

Ella Gashinsky, Yanine Lopez, Claudia Volez, Tatyana Volman, John Does 1-10 and ABC

Corporations 1-10, alleges as follows:

## <u>INTRODUCTION</u>

1.      This action concerns a dentist, Vladimir Gashinsky, D.D.S. ("Dr. Gashinsky"), his

wife and office manager, Ella Gashinsky ("Ella Gashinsky"), and his company, Holistic Dental

Center, LLC ("HDC," together with Dr. Gashinsky and Ella Gashinsky, the "Gashinsky

Defendants") who, as part of their business model, secretly recorded patient communications,

visits and treatments without ever disclosing the recordings to the patients or obtaining their consent.

2.      The Gashinsky Defendants' recording of their patients, without their knowledge and consent, and without the consent of Plaintiff, a dentist who worked for Dr. Gashinsky and HDC, is in direct violation of New Jersey's Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq.[1] and its federal counterpart in 18 U.S.C. §2511 (the "Wiretapping").

3.      The Gashinsky Defendants utilized the Wiretapping to further an unethical and illegal scheme.

4.      The Gashinsky Defendants mandated that all dentists, including Plaintiff, conceal treatment options from patients in order to ensure that patients choose the most costly treatment option in order to maximize the profits of the Gashinsky Defendants.

5.      Dr. Gashinsky and his wife continually verbally harangued Plaintiff and other practitioners that patients could only be given one treatment option because if they were provided more than one treatment option the patients would "be confused."

6.      Of course, the sole treatment option the Gashinsky Defendants demanded the patients receive was always the most expensive treatment option, irrespective of the patients' individual needs and financial resources (the "Single Option Treatment Plan").

7.      The Gashinsky Defendants employed the Wiretapping Scheme to enforce their Single Option Treatment Plan.

8.      That is, Dr. Gashinsky, his wife (who is not a dentist) and other staff members (who also were not dentists) directed by Dr. Gashinsky, would listen to the recordings and then

---

[1] Any person who violates this Act is "guilty of a crime of the third degree."  The statutory scheme also provides for a civil remedy as well.

2

verbally harangue Dr. Sawhney and other dentists if they discovered they offered more conservative and less costly alternatives to their patients.

9.      The Gashinsky Defendants also engaged in other illegal conduct.

10.     The Gashinsky Defendants willfully refused to allow employees, including Plaintiff, to participate in the Practice's:  (a)  profit sharing plan (the "Profit Sharing Plan") in violation of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1001(a); (b) pension benefit plan (the "Pension Plan,") in violation of ERISA; and (c) retirement benefit plan (the "Retirement Benefit Plan," together with the Pension and Profit Sharing Plans, the "Plans") in violation of ERISA.

11.     The Gashinsky Defendants also:  (a) willfully violated New Jersey Wage Theft Act, N.J.S.A. 34:11-4.1 et seq. by improperly deducting sums from Dr. Sawhney's paycheck and refusing to remit those sums despite repeated demands; and (b) wrongfully refused to return other monies that Plaintiff requested Dr. Gashinsky hold in trust despite repeated demands for these funds to be returned.

12.     In addition, Dr. Sawhney seeks a declaratory judgment determining the purported employment agreement between Dr. Gashinsky and Dr. Sawhney, containing a restrictive covenant, (the "Purported Agreement"), is void based on Dr. Gashinsky's fraudulent inducement.

13.     To be clear, Dr. Sawhney has no interest in soliciting any of Dr. Gashinsky and HDC's patients.

14.     Rather, Plaintiff seeks to be free of a tyrannical boss who has made her professional and personal life a nightmare.

15.     Alternatively, Plaintiff seeks a declaratory judgment that Dr. Gashinsky's material breaches of the terms of the Purported Agreement - including, but not limited to his obligations to pay retirement benefits and wages pursuant to Section 6.0 and 5.0, respectively – relieves Dr. Sawhney from any obligations she might have had under the Purported Agreement, including the terms of the restrictive covenant set forth therein.

16.     As a further alternative argument, Plaintiff seeks a declaratory judgment that given Dr. Gashinsky and HDC's unethical and illegal conduct, public policy and equitable considerations render the Restrictive Covenant unenforceable against Dr. Sawhney.

17.     Finally, Dr. Sawhney also seeks monetary damages, statutory damages, punitive damages and attorneys' fees against Defendants based on, inter alia, Defendants' violation of ERISA, New Jersey Wage Theft Act, New Jersey's Wiretapping and Electronic Surveillance Control Act and breach of the Purported Agreement.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over ERISA claims under 29 U.S.C. §1132(e)(1) and over all other non-ERISA claim asserted in this action under 28 U.S.C. §1367.

19.     This Court is a proper venue under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district; to wit, the benefits owed under ERISA were due and owing to Plaintiff in this judicial district, which is where Plaintiff was employed.   The Court is also a proper venue under 29 U.S.C. §1332(e)(2) because the breaches of the Plans took place in this judicial district; to wit, the Plaintiff was denied ERISA benefits under the Plans despite their employment in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

### THE PARTIES

20.     Plaintiff Jayshree Sawhney, DDS ("Dr. Sawhney") is an individual who resides in Short Hills, New Jersey.  At all relevant times, Dr. Sawhney has been licensed to practice dentistry by the State of New Jersey.

21.     From 2013 until approximately September 2018, Dr. Sawhney practiced dentistry as an employee of Defendant Dr. Vladimir Gashinsky, DDS's ("Dr. Gashinsky") dental practice known as Holistic Dental Center at 91 Millburn Ave, Millburn, New Jersey (the "Practice").

22.     Upon information and belief, from 2013 through September 2018, the Practice operated as a sole proprietorship of Dr. Gashinsky.  Upon information and belief, from September 2018 to the present, the Practice was owned and operated by Holistic Dental Center, LLC ("HDC").

23.     Defendant Dr. Gashinsky is an individual who resides in Florham Park, New Jersey.

24.     HDC is a New Jersey limited liability company with its principal place of business located at 91 Millburn Avenue, Millburn, New Jersey which, upon information and belief, is owned by Dr. Gashinsky.

25.     Upon information and belief, Dr. Gashinsky formed Holistic Dental Center, LLC in September 2018 in order to own and operate the Practice.  From approximately September 2018 to November 12, 2019, HLC employed Dr. Sawhney as a dentist at the Practice.

26.     Defendant Ella Gashinsky ("Ella Gashinsky"), the wife of Dr. Gashinsky, is an individual who resides in Florham Park, New Jersey.

27.     At all relevant times, Ella Gashinsky has been the office manager of the Practice and an employee of Dr. Gashinsky and/or HDC.

28.     Defendant Yanine Lopez is an individual who, upon information and belief, resides in the State of New Jersey and is an employee of HDC.

29.     Defendant Claudia Voldez is an individual who, upon information and belief, resides in the State of New Jersey and is an employee of HDC.

30.     Defendant Tatyana Volman is an individual who, upon information and belief, resides in the State of New Jersey and is an employee of HDC.

31.     John Does 1-10 are fictitious individuals who Plaintiff, at this time, is unable to identify.

32.     ABC Corporations are fictitious entities who Plaintiff, at this time, is unable to identify.

## DR. SAWHNEY IS HIRED BY DR. GASHINSKY AND REFUSES TO EXECUTE AN EMPLOYMENT AGREEMENT CONTAINING A RESTRICTIVE COVENANT

33.     Dr. Gashinsky hired Dr. Sawhney to provide dental services to the Practice in approximately May 2013.

34.     At the time Dr. Gashinsky hired Dr. Sawhney, he sought for her to enter into a written employment agreement containing a restrictive covenant stating that she would not operate a dental practice, or work for another dentist, within a fifteen (15) mile radius of the Practice in Millburn, New Jersey (the "Restricted Area").

35.     Dr. Sawhney refused to sign the written employment agreement.  She specifically told Dr. Gashinsky she could not sign the agreement because the geographic restriction would cause her to suffer a severe hardship.

36.     The restrictive covenant– due to its broad scope and New Jersey traffic – would require Dr. Sawhney to drive at thirty (30) to forty-five (45) minutes each way to seek work at a new employer or to operate a practice of her own.

37.     Dr. Sawhney told Dr. Gashinsky that due:  (a) her family commitments including raising three children; (b) caring for a husband who has significant daily limitations from keratonus in both eyes, which have already necessitated dual corneal transplants; and (c) her own health problems including chronic and severe anemia (which has resulted in multiple hospitalizations), she could not agree to such restrictions.

38.     Further, Dr. Sawhney made it known from the outset that she was already an experienced dentist who was not seeking just a salary, but wanted to become a partner and owner in a practice.

39.     Dr. Gashinsky acknowledged all of these points and decided to hire Dr. Sawhney on a full-time basis despite her refusal to sign the employment agreement.

40.     Prior to her hiring, Dr. Gashinsky promised Dr. Sawhney that she would be entitled to all benefits granted to all the other Practice's employees.

41.     After Dr. Sawhney began working, however, Dr. Gashinsky refused to permit Dr. Sawhney to join or obtain any benefits from the Practice's Retirement Benefit, Pension and Profit Sharing Plans.

## GASHINSKY'S BAIT AND SWITCH

42.     Beginning in or around the beginning of 2015, Dr. Sawhney spoke with Dr. Gashinsky and asked if she had proved her competence as a clinician and stated she wanted to join the practice as a partner.

43.     In response, Dr. Gashinsky stated he did not believe she was ready to become a partner in the Practice and claimed she needed to obtain experience regarding various dental management programs and other dental technology.

44.     Although Dr. Sawhney was skeptical of Dr. Gashinsky's reasoning, she began taking a series of courses – many of them in seminars located out of state – to become more experienced and proficient in various dental management programs and dental technology.

45.     Dr. Gashinsky and Dr. Sawhney continued their discussions about Dr. Sawhney becoming a partner in the Practice intermittently throughout 2015 and into 2016.

46.     Beginning in 2016, Dr. Sawhney became more insistent about being made a partner.

47.     In response, Dr. Gashinsky stated he had already been a partner in several dental practices and that his relationships with all of his partners had ended badly.

48.     Dr. Gashinsky then raised, for the first time, the idea about Dr. Sawhney's outright purchase of the Practice.

49.     Dr. Gashinsky's statements that he would be willing to sell the Practice to Dr. Sawhney resulted in a series of new discussions between Dr. Sawhney and Dr. Gashinsky.

50.     On December 16, 2016, Dr. Gashinsky told Dr. Sawhney that he had good news for her that he wanted her to meet him in his office.

51.     He stated that he was ready to sell the Practice to her for $3 Million and that it was a great deal because the Practice was generating $1 million in profits per year.

52.     He also stated he had an envelope to give her that contained information about the offer, but before he could give it to her that she needed to sign the Restrictive Covenant.

8

53.     Dr. Sawhney told Dr. Gashinsky she was reluctant to sign the Restrictive Covenant and she wanted to speak to an attorney or, at least her husband, before signing.

54.     Dr. Gashinsky persisted and stated she needed to sign the Purported Agreement with the Restrictive Covenant and that he could not have the opportunity to have an attorney review the Purported Agreement.  He said she had to sign it that that very instant or he would not sell her the Practice.

55.     He also stated that it did not matter anyway because she was going to own the Practice.

56.     Both excited and somewhat cowed, Dr. Sawhney agreed and signed the Purported Agreement and Dr. Gashinsky handed over the envelope.  A copy of the Purported Agreement signed by Dr. Sawhney is annexed hereto as **Exhibit "A."**

57.     Later, when Dr. Gashinsky opened the envelope it did not contain a proposed contract, but rather a valuation for the Practice (the "Appraisal").  The Appraisal, performed by the firm of Henry Schein and dated October 1, 2016.   A redacted copy of the Appraisal and November 16, 2016 cover letter from Henry Schein are annexed hereto as **Exhibit "B."**

58.     Henry Schein valued the Practice at $2,986,000.  See Exhibit B.

59.     Almost immediately thereafter, Dr. Gashinsky changed the terms of his offer.

60.     Now, apart from asking for a $3 million purchase price, Dr. Gashinsky also demanded a "royalty" of 15% percent of the gross of all revenues generated by the Practice.

61.     The effect of this "royalty," would result in an annual payment of more than $550,000 to Dr. Gashinsky.

62.     In sum, Dr. Gashinsky perpetrated a "bait and switch" on Dr. Sawhney in order to wrongfully induce her to execute the Purported Agreement containing the Restrictive Covenant.

63.     Dr. Gashinsky even documented his bait and switch in an April 7, 2017 letter from his then counsel stating that Dr. Gashinsky would be entitled to 15% of the Practices Revenues for a period of no less than ten (10) years (the "15% Cut").

64.     When Dr. Sawhney explained to Dr. Gashinsky there would be virtually no profit remaining if she paid him this 15% Cut together with the interest on loan to pay the purchase price, Dr. Gashinsky was unmoved.

## GASHINSKY WIRETAPPS PATIENTS WITHOUT THEIR KNOWLEDGE OR CONSENT

65.     After Dr. Sawhney indicated that she would not pay the outrageous sum demanded by Dr. Gashinsky, he became more controlling, unreasonable and myopically focused on maximizing the Practice's revenues.

66.     Dr. Gashinsky told Dr. Sawhney and other dentists they should not provide multiple treatment options to the patients.

67.     He said that would "confuse" the patients and to prevent this confusion the patients needed to be given a single treatment option.

68.     This, not surprisingly, would be the most expensive treatment option.

69.     Dr. Sawhney was troubled by Dr. Gashinsky's directives and believed it was her ethical obligation to provide her patients with multiple treatment options and permit the patient to make a choice about what treatment plan was best for them.

70.     Dr. Sawhney decision to provide multiple treatment options to patients resulted in repeated conflicts between her and Dr. Gashinsky.

71.     To further control Dr. Sawhney, Dr. Gashinsky had "treatment coordinators" accompany her into the treatment rooms when Dr. Sawhney treated patients.

72.     In all instances, the "treatment coordinators" were not dentists or even clinicians (except for one hygienist), but non-clinicians who merely acted as Dr. Gashinsky's minions.

73.     That is, these "treatment coordinators" were there to inform Dr. Gashinsky when Dr. Sawhney provided different treatment options to patients and rejected Dr. Gashinsky's Single Option Treatment Plan.

74.     Dr. Gashinsky's controlling conduct escalated when Dr. Sawhney attended a meeting with him and two of his "treatment coordinators."

75.     During the meeting, Dr. Gashinsky indicated that he planned on recording patient visits and treatments to ensure the patient was receiving the correct treatment plans.

76.     Dr. Sawhney objected and told Dr. Gashinsky that she did not want to be recorded.  She also told Dr. Gashinsky that the patients should only be recorded if they were given notice and consented to this.

77.     That is, Dr. Sawhney believed it was unethical to record a patient without their knowledge or consent as it would destroy the relationship of trust between the patient and practitioner.

78.     Shortly thereafter, Dr. Sawhney noticed that "treatment coordinators" were carrying recording devices in their pockets that were apparently were recording her discussions with patients and her treatment of patients.

79.      At other times, Dr. Sawhney noted other devices in the treatment rooms that she believed were recording devices.

80.     Dr. Gashinsky, on multiple occasions, confronted Dr. Sawhney about her refusal to comply with this Single Option Treatment Plan based on recordings that were made by the "treatment coordinators."

81.     At no time did Dr. Sawhney consent to the recording of her of her patients recording by Dr. Gashinsky, the "treatment coordinator," or other staff of the Practice.

82.     At no time did Dr. Gashinsky or other employees of the Practice notify the Practice's patients that their conversations with the practice's staff and practitioners as well as their dental treatment were being recorded.

83.     On repeated occasions, Dr. Sawhney and her patients were recorded without their consent without Dr. Gashinsky, the treatment coordinators or any other staff member who consented to the recording in the room in violation of N.J.S.A. 2A:156A-1 et seq. and its federal counterpart in 18 U.S.C. §2511 (the "Wiretapping").

84.     The treatment coordinators who engaged in foregoing conduct include Defendants Yanine Lopez, Claudia Voldez and Tatyana Volman (collectively, the "Coordinator Defendants").

85.     Upon information and belief, Ella Gashinsky actively implemented the Single Option Treatment Plan and actively assisted and oversaw the illegal Wiretapping together with her husband, Dr. Gashinsky.

86.     Upon information and belief, Dr. Gashinsky, Ella Gashinsky and the Coordinator Defendants engaged in the Wiretapping of other patients and dental practitioners without their consent and/or knowledge.

87.     Upon information and belief, Dr. Gashinsky, Ella Gashinsky and the Coordinator Defendants engaged in the Wiretapping of other patients and dental practitioners to enforce Dr. Gashinsky's unethical and legally dubious Single Option Treatment Plan.

88.     Upon information and belief, Dr. Gashinsky, Ella Gashinsky and the Coordinator Defendants arranged for recording devices to be placed throughout various locations in the

Practice's office in order to record communications of employees and patients without their knowledge or consent.

89.     At no point did Dr. Gashinsky, Ella Gashinsky or the Coordinator Defendants ever provide any notice to patients of the Practice about the Wiretapping.

90.     At no point did Dr. Gashinsky, Ella Gashinsky or the Coordinator Defendants ever obtain Dr. Sawhney's consent to the Wiretapping.

## DR. GASHINSKY AND HDC'S ERISA VIOLATIONS

91.     Dr. Sawhney has been an employee of Practice since 2013.

92.     Upon information and belief, the Practice was owned and operated as a sole proprietorship of Dr. Gashinsky from 2013 until the fall of 2018.

93.     Upon information and belief, the Practice was owned and operated by HDC from the fall of 2018 to the present.

94.     From 2013 through November 12, 2019, Dr. Sawhney was an employee of Dr. Gashinsky and/or HDC (the "Employment Period").

95.     During the Employment Period, Dr. Sawhney was entitled to receive employee benefits provided to all other employees of the Practice (the "Employee Benefits"), including, but not limited to, benefits under the Practice's Profit Sharing, Pension and Retirement Benefit Plans (the "Plans").

96.     Excerpts of the enrollment guide for the Plans – only first given to Dr. Sawhney last week – are annexed hereto as **Exhibit "C."**  The Plans, which appear to be currently administered by Voya Financial – list the owner of the Plans as "Vladimir Gashinsky, DDS."

97.     The Profit and Loss Statements for the Practice - between 2015 to 2018 - state the Practice incurred "Pension Expenses" of $107,385.42 and "Profit Sharing Plan" expenses of $169,217.25.

98.     Upon information and belief, Dr. Gashinsky was a fiduciary of the Plans during the Employment Period and currently acts as a fiduciary of the Plans.

99.     Upon information and belief, Ella Gashinsky was a fiduciary of the Plans during the Employment Period and is currently a fiduciary of the Plans.

100.    Upon information and belief, John Does 1-5 and ABC Corporations 1-5 were fiduciaries of the Plans during the Employment Period and current act as fiduciaries of the Plans.

101.    Dr. Gashinsky, Ella Gashinsky, John Does 1-5 and ABC Corporations 1-5 refused to permit Dr. Sawhney to participate in the Plans in violation of ERISA 29 U.S.C. §1001(a) et seq.

## DR. SAWHNEY'S LAST ATTEMPT TO PURCHASE THE PRACTICE

102.    On or around the beginning of 2019, Dr. Sawhney had reached the end of her tether and began to fear Dr. Gashinsky might never sell the Practice to her on any reasonable terms.

103.    Nevertheless, she clung to the hope, albeit naively, that some type of resolution could be reached if only Dr. Gashinsky could understand that his demand for a 15% Cut of the gross revenues – together with the $3 Million sale price – was unreasonable.

104.    When Dr. Sawhney raised the idea of purchasing the Practice again, Dr. Gashinsky stated he believed the Practice was worth more than $3 Million because sales had increased.

105.    Thus, he said it would be necessary to obtain another appraisal for the Practice. He even had the temerity to demand that Dr. Sawhney pay for this new appraisal, which he claimed would cost $10,000.

106.    After wavering, Dr. Sawhney naively gave Dr. Gashinsky a check for $10,000, but told him not to deposit or use it until after she spoke with her husband.

107.    Despite Dr. Sawhney's directive not to deposit the check, Dr. Gashinsky immediately cashed the check and ordered the appraisal.

108.    The new appraisal, also from Henry Schein and issued on March 13, 2019, valued the Practice at $3,359,000.

109.    Of course, this new valuation made no reference to granting the seller a 15% revenue stream of the Practice's revenues for a decade.

110.    Accordingly, Dr. Sawhney again sought for Dr. Gashinsky to drop his demand for terms that also granted him a future revenue stream.  Dr. Gashinsky again refused.

111.    Subsequently, Dr. Sawhney discovered the cost of the Appraisal was only approximately $3,500 and demanded the Dr. Gashinksy at least return the $6,500.

112.    Dr. Gashinsky and Ella Gashinsky refused.  They claimed the balance was "a retainer," without explaining what that even meant.

113.    To date, and despite due demand, Dr. Gashinsky and Ella Gashinsky have refused to return Dr. Sawhney's funds.

**DR. SAWHNEY PURCHASES HER OWN PRACTICE**

114.    Completely frustrated in her attempts to purchase the Practice and confronted on a daily basis with Dr. Gashinsky's illegal conduct and breaches of his contractual and other legal obligations to her, Dr. Gashinsky decided to by her own dental practice.

115.    She reasonably believed that the terms of Restrictive Covenant, and the Purported Agreement in general, were unenforceable because they were procured by fraud.  In addition, Dr. Sawhney believed it would be inequitable for a Court to enforce the Restrictive Covenant when Dr. Gashinsky had breached his contractual and other legal duties to her for years on end.

116.    In June 2019, Dr. Sawhney purchased a dental practice at 108 N. Union Avenue, Cranford, New Jersey (the "Cranford Practice").

117.    Subsequently, Dr. Sawhney told Dr. Gashinsky about her purchase of the Cranford Practice.

118.    Initially, Dr. Gashinsky stated that her purchase of the Cranford Practice would not be an issue so long as she did not solicit the Practice's patients and did not market her new practice as a holistic dental practice.

119.    Dr. Sawhney agreed to these terms, and agreed to continue working at the Practice until a formal agreement could be reached and to allow Dr. Gashinsky time to fill her position.

120.    Subsequently, Dr. Gashinsky changed his position and now sought a series of new and unreasonable terms from Dr. Sawhney.

121.    Despite Dr. Gashinsky's about-face, Dr. Sawhney continued to work at the Practice with the hope that the parties could resolve their differences.

122.    This, however, did not occur.  Instead, Dr. Gashinsky's controlling and abusive conduct became worse.

123.    To address this, Dr. Sawhney's counsel sent correspondence to Dr. Gashinsky stating that if he did not cease engaging in such conduct that Dr. Sawhney could no longer work at the Practice while the parties tried to reach a resolution to the matter.  A copy of the October

27, 2019 email correspondence from Dr. Sawhney's counsel, Sean M. Lipsky, Esq., to Dr.

Gashinsky's counsel, Todd Conn, Esq., reflecting same, is annexed hereto as **Exhibit "D"**

124.    Dr. Sawhney's pleas were unsuccessful and Dr. Gashinsky's abusive and

controlling conduct continued and now permeated throughout to the Practice to include

numerous staff members.

125.    In addition, Dr. Gashinsky began improperly deducting sums from Dr. Sawhney's

paycheck without providing any good explanation or reasoning.

126.    Despite repeated demands, Dr. Gashinsky refused to repay these improperly

withheld wages or even account for the amount of money withheld as Dr. Sawhney's

compensation was tied directly to her production.

127.    Further, and upon information and belief, Dr. Gashinsky withheld other wages

that Dr. Sawhney earned based on the production she generated while working at the Practice.

128.    On November 12, 2019, Dr. Sawhney notified Dr. Gashinksy that she was unable

to continue working at the Practice.

129.    Dr. Gashinsky has threated to bring suit against Dr. Sawhney to enforce the terms

of the Purported Agreement, including the Restrictive Covenant.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

130.    Dr. Sawhney repeats and realleges each of the allegations contained in the prior

paragraphs of the Complaint as if fully set forth at length herein.

131.    Pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil

Procedure there is a judiciable controversy concerning whether the Purported Agreement and/or

Restrictive Covenant contained therein are:  (a) invalid; or; (b) alternatively, unenforceable

against Plaintiff.

**WHEREFORE**, Plaintiff, Dr. Jayshree Sawhney seeks judgment against Defendants Dr. Vladimir Gashinsky and Holistic Dental Center, LLC:

A.    Declaring that the Purported Agreement is invalid.

B.    Alternatively, declaring that the Purported Agreement and Restrictive Covenant cannot be enforced against Dr. Sawhney;

C.    Alternatively, declaring that Dr. Gashinsky and/or Holistic Dental Center, LLC ("HDC") do not have standing to enforce the Purported Agreement and Restrictive Covenant.

D.    Attorneys' fees and costs of suit; and

E.    Such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Violation of New Jersey's Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A: 156A-1 et seq.)

132.    Dr. Sawhney repeats and realleges each of the allegations contained in the prior paragraphs of the Complaint as if fully set forth at length herein.

133.    Defendants Dr. Gashinsky, Ella Gashinsky, HDC, Yanine Lopez, Claudia Voldez and Tatyana Volman, as aforesaid, violated the terms of New Jersey's Wiretapping and Electronic Surveillance Contract Act by engaged in conduct set forth in N.J.S.A. 2A:156A-3.

134.    As a result of the conduct of Defendants Dr. Gashinksy, Ella Gashinsky, HDC, Yanine Lopez, Claudia Voldez and Tatyana Volman, John Does 6-10 and ABC Corporations 6-10, Plaintiff Dr. Sawhney has suffered damages.

WHEREFORE, Plaintiff Dr. Sawhney demands judgment be entered against Defendants Ella Gashinsky, HDC, Yanine Lopez, Claudia Voldez and Tatyana Volman, John Does 6-10 and ABC Corporations 6-10, jointly and severally, for:

A.    Compensatory damages;

B.    Statutory Damages;

C.      Punitive Damages;

D.      Pre-judgment and post-judgment interest;

E.      Reasonable and statutory attorneys' fees;

F.      Enjoining and ordering the named defendants to destroy and delete each and every recording of Plaintiff;

G.      Costs of suit; and

H.      Such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
**(Violation of Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq.)**

135.    Dr. Sawhney repeats and realleges each of the allegations contained in the prior paragraphs of the Complaint as if fully set forth at length herein.

136.    Defendants Dr. Gashinsky, Ella Gashinsky, HDC, Yanine Lopez, Claudia Voldez and Tatyana Volman, as aforesaid, violated the terms of the United States' Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq.

137.    As a result of the conduct of Defendants Dr. Gashinsky, Ella Gashinsky, HDC, Yanine Lopez, Claudia Voldez and Tatyana Volman, John Does 6-10 and ABC Corporations 6-10, Plaintiff Dr. Sawhney has suffered damages.

WHEREFORE, Plaintiff Dr. Sawhney demands judgment be entered against Defendants Ella Gashinsky, HDC, Yanine Lopez, Claudia Voldez and Tatyana Volman John Does 6-10 and ABC Corporations 6-10, jointly and severally, for:

A.      Compensatory damages;

B.      Statutory Damages;

C.      Punitive Damages;

D.     Pre-judgment and post-judgment interest;

E.     Reasonable and statutory attorneys' fees;

F.     Enjoining and ordering the named defendants to destroy and delete each and every recording of Plaintiff;

G.     Costs of suit; and

H.     Such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Claim for Benefits Under ERISA)

138.   Dr. Sawhney repeats and realleges each of the allegations contained in the prior paragraphs of the Complaint as if fully set forth at length herein.

139.   ERISA §502(a)(1)(B) and 29 U.S.C. §1132(a)(1)(B), allow participants and beneficiaries to enforce plan terms and to require that plan administrators meet their du ties to provide plan benefits in accordance with the plan.

140.   During the Employment Period, Dr. Gashinsky and HDC were required to provide the Plans to all employees.

141.   Upon information and belief, Dr. Gashinsky, Ella Gashinksky, John Does 1-5 and ABC Corporations (collectively, the "ERISA Defendants")  were the fiduciaries of the Plans and, now, remain the fiduciaries of the Plans.

142.   The ERISA Defendants refused and/or did not offer Plaintiff the opportunity to join, participate in and/or receive the benefits of any of the Plans.

143.   Upon information and belief, the ERISA Defendants refused and/or did not offer individuals other than Plaintiff the opportunity to join, participate in and/or receive the benefits of the Plans.

144.    Upon information and belief, Plaintiff may have been eligible to joint additional ERISA benefit plans of Dr. Gashinsky and HDC, but the ERISA Defendants have failed and/or refused to identify those ERISA benefit plans to Plaintiff and, thus, Plaintiff has been denied the opportunity to join, participate in and/or receive the benefits of these ERISA benefit plans.

145.    Upon information and belief, Plaintiff may have been eligible to joint additional ERISA benefit plans of Dr. Gashinsky and HDC, but the ERISA Defendants failed and/or refused to identify those ERISA benefit plans to Plaintiff and, thus, Plaintiff has been denied the opportunity to join, participate in and/or receive the benefits of these ERISA benefit plans.

146.    Upon information and belief, individuals other than Plaintiff may have been eligible to joint additional ERISA benefit plans of Dr. Gashinsky and HDC, but the ERISA Defendants failed and/or refused to identify those ERISA benefit plans to said individuals and, thus, they were denied the opportunity to join, participate in and/or receive the benefits of these ERISA benefit plans.

147.    Any attempt by Plaintiff to seek a remedy through any administrative proceeding through ERISA would have been futile.

148.    The conduct of the ERISA Defendants was unlawful.

149.    The ERISA Defendants wrongful conduct have damages Plaintiff in an amount to be proven at time of trial.

WHEREFORE, Plaintiff Dr. Sawhney demands judgment be entered against Defendants Dr. Gashinsky, Ella Gashinsky, HDC, John Does 1-5 and ABC Corporations 1-5, jointly and severally, for:

A.    Compensatory damages;

B.    Statutory Damages;

   C.  Payment to Plaintiff of all amounts due under the ERISA benefit plans of Defendants HDC and Dr. Gashinsky;

   D.  An order retroactively reforming the ERISA benefit plans of Defendants HDC and Dr. Gashinsky and requiring the ERISA Defendants to comply with ERISA's vesting and benefit accrual provision and requiring the ERISA Defendants to pay restitution in the form of a surcharge or otherwise credit Plaintiff for all ERISA benefits to which they are entitled under the ERISA benefit plans in order to be made whole.

   E.  Punitive Damages;

   F.  Pre-judgment and post-judgment interest;

   G.  Reasonable and statutory attorneys' fees;

   H.  Costs of suit; and

   I.  Such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**(Violation of New Jersey's Wage Theft Law)**

150. Dr. Sawhney repeats and realleges each of the allegations contained in the prior paragraphs of the Complaint as if fully set forth at length herein.

151. The Defendants Dr. Gashinsky, HDC and Ella Gashinsky are each "Employer" as defined by N.J.S.A. 34:11-4.1.

152. Defendants Dr. Gashinsky, HDC and Ella Gashinsky, as aforesaid, violated N.J.S.A. 34:11-4.10 by failing and refusing to pay Plaintiff Dr. Sawhney all of her wages.

153. As a result of the conduct of Dr. Gashinsky, HDC and Ella Gashinsky, Plaintiff Dr. Sawhney has suffered damages.

WHEREFORE, Plaintiff Dr. Sawhney demands judgment be entered against Defendants Dr. Gashinsky, HDC and Ella Gashinsky, jointly and severally, for:

A.      Compensatory damages;

B.      Statutory Liquidated Damages;

C.      Punitive Damages;

D.      Pre-judgment and post-judgment interest;

E.      Reasonable and statutory attorneys' fees;

F.      Costs of suit; and

G.      Such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### (Conversion)

154.    Dr. Sawhney repeats and realleges each of the allegations contained in the prior paragraphs of the Complaint as if fully set forth at length herein.

155.    As aforesaid, Defendants Dr. Gashinsky, HDC and Ella Gashinsky intentionally, willfully and wrongfully exercised control over the property of Dr. Sawhney without any legal basis and in contravention of the legal rights of Dr. Sawhney.

156.    Based on the conduct of Defendants Dr. Gashinsky, HDC and Ella Gashinsky Plaintiff Dr. Sawhney suffered substantial damages in an amount to be proved at trial.

WHEREFORE, Plaintiff Dr. Sawhney demands judgment be entered in its favor and against Defendants Dr. Gashinsky, HDC and Ella Gashinsky, jointly and severally, for:

A.      Compensatory and consequential damages in the amount to be proved at trial;

B.      Attorneys' fees and costs;

C.      Punitive damages;

D.      Pre- and post-judgment interest; and

E.      Such other and further relief as this Court deems just.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

157.    Dr. Sawhney repeats and realleges each of the allegations contained in the prior paragraphs of the Complaint as if fully set forth at length herein.

158.    As aforesaid, Defendants Dr. Gashinsky, HDC and Ella Gashinsky intentionally, willfully and wrongfully exercised control over the property of Dr. Sawhney without any legal basis and in contravention of the legal rights of Dr. Sawhney.

159.    As a result, Defendants Dr. Gashinsky, HDC and Ella Gashinsky have been unjustly enriched to the detriment of Plaintiff Dr. Sawhney.

WHEREFORE, Plaintiff Dr. Sawhney demands judgment be entered in its favor and against Defendants Dr. Gashinsky, HDC and Ella Gashinsky, jointly and severally, for:

A.    Compensatory and consequential damages;

B.    Attorneys' fees and costs;

C.    Pre- and post-judgment interest; and

D.    Such other and further relief as this Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

LIPSKY PORTALES, P.A.
Attorneys for Plaintiff, Jayshree Sawhney, DDS

By:     _/s/ Sean M. Lipsky_____
        Sean M. Lipsky, Esq.

DATED:  November 15, 2019

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, Plaintiff Jayshree Sawhney certifies that the mater in controversy in this action is not the subject of any other court proceeding, arbitration or administrative proceeding.

LIPSKY PORTALES, P.A.
Attorneys for Plaintiff, Jayshree Sawhney, DDS

By:    _/s/ Sean M. Lipsky_____
        Sean M. Lipsky, Esq.

DATED:  November 15, 2019